**GALVESTON ELECTRIC CO. v. HANSEN et al. (No. 9131.)**

Court of Civil Appeals of Texas. Galveston.
May 10, 1928.

Rehearing Denied May 31, 1928.

1. Street railroads ⚫⟹114(8, 10)—Jury's finding of motorman's negligence in not keeping proper outlook and in not operating car at proper speed, resulting in injury to boy, held sustained by evidence.

In action for injuries to 6 year old boy when struck by street car, evidence *held* to sustain jury's finding that motorman was negligent in not keeping proper outlook to discover approach of boy to the track and in not operating the car at a careful rate of speed.

2. Street railroads ⚫⟹118(2)—Trial ⚫⟹194(17)—Instruction relating to motorman's duty to discover boy's approach to track held not error as being on weight of evidence or as imposing on motorman duty other than that of ordinary care.

Instruction, in effect, that operator of street car was negligent, if he failed to use ordinary care to discover approach of six year old boy to the track, *held* not erroneous as being on weight of evidence or as imposing duty on operator of street car other than that of ordinary care in its operation.

3. Appeal and error ⚫⟹1066—Unnecessary instruction as to motorman's duty held not to require reversal.

Instruction that operator of street car was negligent if he failed to use ordinary care to discover boy's approach to track, being unnecessary, in that such duty was imposed on motorman as a matter of law, *held* not to require reversal.

4. Trial ⚫⟹194(17)—Instruction relating to speed at which motorman was required to operate street car held to invade jury's province.

Instruction that motorman was required to operate street car so that it could be brought to stop within reasonable distance should he observe children approaching track *held* error as invading exclusive province of jury to determine all questions of fact raised by evidence.

5. Appeal and error ⚫⟹1064(2)—Error in instruction on issue as to speed of street car striking plaintiff did not require reversal.

Error, because invading jury's province, in instruction as to speed of street car at which motorman was required to operate it at place of accident, *held* not to require reversal, where it could not possibly have influenced jury in determining answer to issue whether motorman was negligent in failing to use ordinary care to discover plaintiff's approach to the track, and jury's finding on such issue being sufficient to sustain judgment.

6. Street railroads ⚫⟹117(31)—Contributory negligence of 6 year old child struck by street car held insufficient for jury.

Evidence of contributory negligence of 6 year old child struck by street car, not showing that he possessed such intelligence and judgment that he should be charged with contributory negligence in attempting to cross street in disregard of approaching street car, *held* insufficient for jury.

7. Damages ⚫⟹131(4)—$5,000 for injuries to 6 year old boy, consisting of fractured skull and for pain and suffering, held not excessive.

$5,000 damages for injuries to 6 year old boy, consisting of fractured skull, causing unconsciousness for several days, and confinement in hospital for 3 weeks, and boy still suffering from effect of injury 18 months thereafter, *held* not excessive.

Appeal from District Court, Galveston County; C. G. Dibrell, Judge.

Action by Selma Hansen for herself and as next friend of her minor son, William, against the Galveston Electric Company. Judgment for plaintiff, and defendant appeals. Affirmed.

Terry, Cavin & Mills, of Galveston, for appellant.

W. E. Price, of Galveston, for appellee.

PLEASANTS, C. J. This suit was brought by appellee Selma Hansen for herself and as next friend of her minor son, William Hansen, to recover damages for personal injuries

---

to the minor alleged to have been caused by the negligent operation of a street car owned and operated by appellant in the city of Galveston.

The petition alleges, in substance, that on or about the 13th day of October, 1925, the plaintiff William Hansen, who was about 6 years old, was struck and injured by a street car of appellant which was being operated by one of appellant's employees over and along Twenty-First street in the city of Galveston; that, at the time his injury occurred the boy was crossing Twenty-First street on his way from his school on the east side of the street to the Galveston Orphans' Home, of which he was an inmate, and which is situated on the west side of the street.

The allegations of negligence contained in the petition and submitted to the jury as grounds for recovery were the failure of the motorman in operating the car "to keep a lookout for persons on or near said track, and particularly for plaintiff, who was attempting to cross said track," and in operating the car "at such a reckless and careless rate of speed, under all the circumstances, that the motorman could not stop said car until it had dragged plaintiff a distance of 30 feet."

The defendant answered by general demurrer and general and special denial of the negligence charged in the petition, and specially pleaded contributory negligence on the part of William Hansen in attempting to cross the street in front of the approaching car.

The trial in the court below with a jury resulted in a verdict and judgment in favor of the defendant against the individual claim of plaintiff Selma Hansen, and in favor of plaintiff William Hansen against the defendant for the sum of $5,000.

The evidence shows that William Hansen, who at the time of his injury was a little over 6 years old, while crossing Twenty-First street in the city of Galveston, on his way from a kindergarten school, at which he was a pupil, to his home at the Galveston Orphans' Home, was struck and seriously injured by a street car operated by appellant on Twenty-First street. The school was situated east and north of the intersection of Twenty-First street and Avenue L. The orphans' home is situated a block south of Avenue L, and fronts on the west side of Twenty-First street. The boy was struck by the car when near the center of the street and a short distance south of the intersection of the street with Avenue L. He testified, in substance, that he and two other boys who left the school with him were engaged in a walking race from the school to the orphans' home; that, when they reached the intersection of Avenue L and Twenty-First street, and started across the street, he was a little ahead; that he did not go straight across the street, but "turned a little up towards the orphans' home"; and that he did

not see the car until it struck him. He heard no gong or bell on the car.

There are two car tracks on this street, one east and the other west of the center of the street, which has a width of 48 feet between the sidewalk curbs. The car that struck the boy was going north on the eastern track. After the car was stopped, the boy was found lying between the tracks 35 or 40 feet south of Avenue L.

As the car approached the place of the accident, it was running at a speed of 15 miles an hour, and it was stopped in 35 or 40 feet after it struck the boy. The motorman testified that he did not slacken the speed of the car when he first saw the boys on the sidewalk, but, as soon as the Hansen boy started running across the street, he sounded his gong, applied his brakes, and did all he could to prevent striking the boy.

At this time the orphans' home had something over 40 inmates, and about 30 of these children attended the school on the east side of Twenty-First street. Other children in that locality, which was a thickly settled portion of the city of Galveston, crossed Twenty-First street in that locality on their way to and from school.

[1] We think the evidence is sufficient to sustain the findings of the jury that the motorman was negligent in not keeping a proper lookout to discover the approach of the boy to the track, and in not operating the car at a careful rate of speed, under all of the circumstances shown by the evidence; and appellant's assignment complaining of the verdict on the ground that it is so against the great weight and preponderance of the evidence as to require a reversal of the judgment cannot be sustained.

In submitting these issues of negligence to the jury, the charge, after defining negligence, ordinary care, and proximate cause, contains the following instructions:

"I further charge you that it was the duty of the operator of the defendant's street car, at the time and place in question, to use ordinary care to watch for and observe the approach of persons, and especially children such as plaintiff William Hansen, toward the track on which said car was being operated, and to use ordinary care to prevent striking such persons.

"Keeping the foregoing definitions and instructions in mind, you will answer the following questions:

"(1) Did the operator of the defendant's street car, at the time and place in question, use ordinary care to observe the approach of the plaintiff William Hansen toward the track on which said car was being operated? Answer, 'He did,' or 'He did not.'"

In submitting the second issue of negligence, the charge instructs the jury as follows:

"(4) I also charge you that it was the duty of the operator of the defendant's street car to run and operate said car at the time and place

in question at a moderate and careful rate of speed under all the circumstances, so that said car might be brought to a stop within a reasonable distance by said operator, should he observe children, such as the plaintiff William Hansen, upon or approaching said track. With this instruction in mind, you will answer the following question: Was or was not the operator of defendant's street car, at the time and place in question, operating and running same at a moderate and careful rate of speed under all the circumstances? Answer 'He was,' or 'He was not.' "

Under appropriate assignments and propositions, appellant complains of these instructions on the ground that they were neither explanations or definitions of legal terms, but were in effect a general charge not permitted to be given a jury in a case submitted upon special issues, and, further, because they were charges upon the weight of the evidence.

[2, 3] We do not think these objections are valid as applied to the instruction submitting the first issue of negligence. It is true that the matter contained in this charge was not an explanation or definition necessary to enable the jury to pass upon the question submitted. But this instruction is a correct statement of the law, is not upon the weight of the evidence, and only tells the jury, in effect, that the operator of the car was negligent if he failed to use ordinary care to discover the boy's approach to the railway track. It is not conceivable that this instruction could have possibly influenced the jury in answering the question of whether the motorman used ordinary care to discover plaintiff's approach.

This charge is clearly free from the error contained in the charge condemned by our Supreme Court in the case of Galveston Electric Co. v. Marangola, 283 S. W. 777. In that case the charge was interpreted by the Commission of Appeals as imposing an absolute duty upon the employees of the appellant to stop its car a reasonable length of time to allow passengers to alight therefrom, and, as so interpreted, was held to be erroneous, because the duty imposed by law upon the operatives was to use a high degree of care in the operation of its cars. The language of the charge above quoted cannot be construed as imposing any duty upon the operator of the car other than that of ordinary care in its operation. This duty rested upon him as a matter of law, and, while the court was not required to so instruct the jury, such unnecessary instruction should be held harmless, and not require a reversal of the judgment. Houston L. & P. Co. v. Daily (Tex. Civ. App.) 291 S. W. 317.

[4, 5] The instruction in the charge submitting the second issue of negligence above quoted is, we think, clearly violative of the statute which forbids the court in his charge to encroach upon the exclusive province of the jury to determine all issues of fact raised by the evidence. Upon the evidence in this case, no duty was imposed by law upon the operator of the car in respect to the speed at which he should operate his car at the time and place of the accident, and it was for the jury to determine, from all the facts and circumstances shown by the evidence, what duty ordinary care required the motorman to exercise in this respect.

It goes without saying that this error in the charge submitting the second issue of negligence could not possibly have influenced the jury in determining the first issue submitted, and, the finding of the jury upon this issue being sufficient to sustain the judgment, the error in the submission of the second issue becomes immaterial.

[6] The trial court did not err in refusing to submit to the jury the question of contributory negligence on the part of the child, William Hansen. This court would be loath to hold in any case that a child 6 years old should be denied recovery for injuries caused by the negligence of an adult defendant, and there is nothing in the facts of this case which would authorize the jury to find that plaintiff William Hansen possessed such a degree of intelligence and mature judgment and discretion that he should be charged with contributory negligence in attempting to cross the street without observing, or in disregard of, the approaching street car.

[7] We cannot agree with appellant that the amount of damages found by the jury is so excessive as to authorize this court to hold that, in fixing the amount, the jury were not exercising their unbiased and unprejudiced judgment as to what amount would reasonably compensate the appellee for the injuries sustained by him, and were actuated by an improper motive.

The evidence shows that the child's skull was fractured, that he was unconscious for several days, and remained in the hospital for 3 weeks, during which time, from the character of the injury and its treatment, which included the tapping of his spine, he necessarily suffered much pain. While he had recovered at the time of the trial (18 months after his injury occurred) in appearance and mentality and so far as medical examination could disclose, he still suffers from the effect of his injury. He testified:

"Since I was hit by the street car, as to how my head is, I don't know; it hurts up here (indicating) every morning and sometimes in the evening. I don't know if it affected me in any other way. I get dizzy sometimes. I get dizzy just once in a while. I get dizzy in the morning and evening. When I came back from the hospital I came home first. After I went back to the orphans' home once in a while in the morning I vomited. The last time I vomited in the morning was about 3 weeks ago. As to how long it was before that that I vomited, I used to vomit nearly every morning. I don't vomit any more. It has been about 3 weeks ago

since I vomited. I haven't vomited since that time."

The physicians who testified in the case all say that vomiting is one of the usual symptoms and results of skull fracture.

While the amount of the verdict appears to us a very liberal compensation for the injuries sustained by appellee, we do not feel authorized to disturb the finding of the jury upon this issue.

This disposes of all of the material questions presented by appellant's brief. All of the propositions presented have been considered, and none of them, in our opinion, should be sustained. It follows that the judgment should be affirmed, and it has been so ordered.

Affirmed.